**In the Matter of FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of Bank of New England, N.A.**

**MBD No. 91–10110.**

United States District Court, D. Massachusetts.

April 23, 1991.

Alice K. Livdahl, Stephan M. Rodolakis, Peters & Erskine, Worcester, Mass., for New Bank of New England, N.A.

Roy A. Bourgeois, Wilson, Bourgeois, Millott & Dresser, Worcester, Mass., for Sally D. Barnhart.

Allen N. David, Peabody & Allen, Boston, Mass., for petitioners.

## MEMORANDUM AND ORDER

KEETON, District Judge.

On February 8, 1991, to facilitate the administration of a large number of cases pending in this district involving the insolvent Bank of New England, N.A. or one of its subsidiaries (collectively, the "Bank") as a party, this court entered two orders on the Miscellaneous Business Docket (Docket No. 6 and Docket No. 8) that substituted (1) the New Bank of New England, N.A. (the "Bridge Bank") for the Bank as the plaintiff or counterclaim plaintiff in any case then pending or removed and assigned to a judge of this court; and (2) the Federal Deposit Insurance Corporation as Receiver for the Bank of New England, N.A. ("FDIC") for the Bank as the defendant or counterclaim defendant in any case then pending or removed and assigned to a judge of this court.

Now pending before the court are the following: (1) Motion of FDIC for a Stay of Proceedings (Docket No. 3, filed January 29, 1991) along with three supporting memoranda (Docket No. 4, filed January 29, 1991; Docket No. 9, filed February 11, 1991; and Docket No. 30, filed March 5, 1991); (2) numerous opposition memoranda; and (3) the Reply of FDIC to Oppositions to Stay (Docket No. 42, filed March 26, 1991).

## I.

In its Second Supplemental Memorandum in Support of Motion to Stay (Docket No. 30), the FDIC describes the "takeover" of the Bank by the FDIC that underlies the Motion for Stay. On January 6, 1991, the Office of the Comptroller of the Currency declared the Bank insolvent and appointed the FDIC to be receiver of the Bank pursuant to 12 U.S.C. § 1821(c)(2). The FDIC, in turn, chartered the Bridge Bank pursuant to 12 U.S.C. § 1821(n) and assigned to the Bridge Bank substantially all of the assets of the Bank; the FDIC, as receiver, retained substantially all of the non-deposit liabilities of the Bank. As a result of the foregoing events, the Bridge Bank succeeded to all of the affirmative causes of action asserted by the Bank at the time of its insolvency, and the FDIC assumed liability for all claims against the Bank.

In its Motion for Stay, the FDIC is seeking a stay of all claims asserted against the Bank and assumed by the FDIC, as receiver, pending exhaustion by claimants of the administrative claim review procedure set forth in 12 U.S.C. § 1821(d)(3)–(8). The FDIC is not seeking a stay of all affirmative claims asserted by the Bank, which claims have been assigned to the Bridge Bank.

Upon review of the submissions before me, and after hearing oral argument on February 19, 1991, I conclude that each claim asserted against the Bank, and now

assumed by the FDIC as receiver, must be stayed pending exhaustion of the FDIC's claim review procedure. However, to avoid piecemeal litigation and as a matter of equity, I also conclude that in any case in which a claimant's claim against the FDIC has been stayed, for the duration of that stay, all affirmative claims of the Bank in that case now assumed by the Bridge Bank should likewise be stayed.

## II.

■ The stay sought by the FDIC is not explicitly authorized by the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIR-REA"), Pub.L. No. 101–73 (1989). Instead, the right to a stay is necessarily implied in the provisions in FIRREA for the administrative processing by the FDIC, as receiver, of claims against an insolvent bank, 12 U.S.C. § 1821(d)(3)–(8).

The FDIC, in its capacity as receiver for an insolvent bank, has been vested by Congress with the administrative power to initially determine claims against any such bank. 12 U.S.C. § 1821(d)(3)(A). The FDIC must determine whether to allow or deny any claim within 180 days of the date that the claim is filed with the FDIC. 12 U.S.C. § 1821(d)(5)(A)(i). If a claim is denied by the FDIC, then, within 60 days of such denial, a "claimant may request administrative review of the claim ... or file suit on such claim (or continue an action commenced before the appointment of the receiver)" in the appropriate district court of the United States. 12 U.S.C. § 1821(d)(6)(A). If the claimant fails to pursue either route authorized by § 1821(d)(6)(A) for review of the administrative denial of its claim within the foregoing 60 day time frame, then the administrative denial of the claim is final. 12 U.S.C. § 1821(d)(6)(B).

Section 1821(d)(13)(D) provides:

*Except as otherwise provided in this subsection,* no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the ... [FDIC] has been appointed receiver, including assets which the ... [FDIC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the ... [FDIC] as receiver.

(Emphasis added). The FDIC argues that because § 1821(d)(13)(D) prohibits judicial determination of any claims against an insolvent bank, except as otherwise specifically permitted by § 1821(d), all action on any claims against the Bank (the liability for which has been assumed by the FDIC as receiver for the Bank) must necessarily be stayed until the administrative claim review process (that allows for judicial determination of claims *after* administrative determination) has been completed. However, several of the parties who filed oppositions to the Motion for Stay argue that any causes of action that were pending against the Bank at the time that the FDIC was appointed receiver should not be stayed because § 1821(d)(5)(F)(ii) specifically allows the continuation of such actions. Section 1821(d)(5)(F)(ii) states:

Subject to paragraph (12) [a stay provision not relevant to this proceeding], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

It is not clear from the face of § 1821(d)(5)(F)(ii) whether its purpose is to allow pending litigation to continue *concurrently* with the administrative claim review process or to supplement § 1821(d)(6)(A), which allows for the continuation of actions commenced before the appointment of the FDIC as receiver *after* completion of the administrative claim review. Of course, if the court interpreted § 1821(d)(5)(F)(ii) to allow prosecution of claims during the administrative review of those claims, then an irreconcilable conflict would exist between § 1821(d)(5)(F)(ii) and § 1821(d)(6)(A). The legislative history of FIRREA reveals that no such irreconcilable conflict exists.

House Report No. 101–54(I), 101st Cong., 1st Sess., *reprinted in,* 1989 U.S.Code Cong. & Admin.News 86, discusses in part the administrative claim review process by the FDIC as receiver for an insolvent bank. The House Report states in relevant parts:

> *After* exhaustion of streamlined administrative procedures, a claimant has a choice to either bring a claim de novo in the District Court ... or have the claim determination reviewed by one or more administrative processes.... Any suit (or *motion to renew a suit filed prior to appointment of the receiver*) must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative [review] process is available *only after the claimant has first presented its claim to the FDIC.*

*Id.* at 214 (emphasis added). Thus, it is clear that Congress manifested an intent to permit a claimant to continue an action on a claim instituted against an insolvent bank before appointment of the FDIC as receiver for that bank only after the claimant has exhausted the administrative claim review procedure. It thus necessarily follows that Congress manifested an intent to require a stay of all claims against an insolvent bank pending review of those claims by the FDIC as receiver. *See Tuxedo Beach Club Corporation v. City Federal Savings Bank,* 737 F.Supp. 18, 19–20 (D.N.J.1990); *International Fidelity Insurance Co. v. Yorkville Federal Savings and Loan Association,* 1990 WL 165720 at *2 (S.D.N. Y.). Thus, the FDIC's Motion to Stay all claims against the Bank pending completion of the administrative claim review process must be allowed.

### III.

■ As discussed in Part I above, the FDIC has sought a unilateral stay; it wants to reserve for the Bridge Bank the right to pursue affirmative claims formerly asserted by the Bank before its insolvency notwithstanding the presence in any case involving such affirmative claims of claims against the Bank (the liability for which has now been assumed by the FDIC as receiver) that will be stayed pursuant to Part II of this Memorandum and Order. Such a unilateral stay would lead to wasteful piecemeal litigation, would multiply the burden imposed on this district's already bulging docket, and would inevitably cause some substantive unfairness to parties opposing the claims asserted by the Bridge Bank. Thus, in an exercise of this court's equitable power and inherent power (through the Miscellaneous Business Docket) to exercise administrative control over the caseload of this district, I will order that, in any case in which a claimant's claim against the FDIC has been stayed, for the duration of that stay, all affirmative claims in that case of the Bank now assumed by the Bridge Bank will likewise be stayed.

### IV.

Some of the parties that opposed the FDIC's Motion to Stay challenged the legal authority of the FDIC to assign affirmative claims of the Bank to the Bridge Bank without also assigning to the Bridge Bank the liabilities associated with those affirmative claims. However, this is a substantive issue that is inappropriate for this court to address when considering a motion on the Miscellaneous Business Docket, and, in light of the bilateral stay to be ordered in accordance with Parts II and III above, no party will suffer any prejudice during the pendency of the stay from the challenged bifurcation of affirmative claims of the Bank and their associated liabilities.

Some parties have questioned whether an affirmative defense of setoff or recoupment is a "claim" that must be submitted to the FDIC pursuant to the administrative claim review process of § 1821(d). In Part II of this Memorandum and Order, the court only determined that all "claims" against the Bank (the liability for which has been assumed by the FDIC) must first be submitted to the FDIC before they may be litigated in court. This court would be

delving into an area that is beyond the scope of this Miscellaneous Business Docket matter if it were to determine the precise outline of what constitutes a "claim" under § 1821(d). If a party wishes to question the applicability of the stay to the particular facts of its case, then it may do so by appropriate motion before the judge to whom that case has been drawn.

### ORDER

For the foregoing reasons, it is ORDERED:

All claims asserted against the Bank, the liability for which has now been assumed by the FDIC as receiver for the Bank, in any action now pending in or removed to this court, are stayed until the earlier of (a) November 21, 1991, and (b) the filing by a claimant in a particular case of a Notice of Termination of Stay, supported by an affidavit stating that the claimant complied with the administrative claim review procedure set forth in 12 U.S.C. § 1821(d)(3)–(8), stating that the claim was denied, and specifying the date of the denial. An outline of the claims procedure is attached hereto as Exhibit A for informational purposes. During the pendency of the foregoing stay, as it applies in each particular case, the affirmative claims of the Bridge Bank are also stayed. In the event that a claimant fails to file a claim with the FDIC, in accordance with § 1821(d), on or before May 25, 1991 (the "Bar Date"), then the Bridge Bank may file a Notice of Termination of Stay, supported by an affidavit stating that the claimant failed to file its claim by the Bar Date, and the Bridge Bank may then resume prosecution of any affirmative claim it may have against the claimant.

This Order is not applicable to any claims against the Bridge Bank.

Nothing in this Order shall be construed as a ruling on what constitutes a claim, the appropriate party against whom a claim should be asserted, or the validity of any particular claim.

This Order is made, pursuant to Fed.R. Civ.P. 1, on the Miscellaneous Business Docket of this court to facilitate the administration of a large number of cases. Insofar as this Order affects a particular case, it is subject to modification by the judge to whom the case is drawn, upon motion supported by a showing of good cause.

The FDIC shall serve a copy of this Memorandum and Order on all parties to any litigation matter now pending in this district involving the Bridge Bank as plaintiff or counterclaim plaintiff or the FDIC as defendant or counterclaim defendant.

### EXHIBIT A

### OUTLINE OF THE CLAIMS PROCEDURE FOR THE RECEIVERSHIP OF BANK OF NEW ENGLAND, N.A.

1. Address to which claims are to be sent:

   Claims Agent—Bank 4309
   Federal Deposit Insurance Corporation
   As Receiver of Bank of New England, N.A.
   P.O. Box 3434
   Boston, MA 02101

2. Date by which claims must be filed:
   May 25, 1991

3. Time within which the Receiver must determine to allow or disallow a claim, and so notify the claimant in writing:

   180 days from the date the claim is filed with the Receiver

4. Time within which a claimant can file suit on a denied claim, or continue an action commenced before the appointment of the Receiver:

   Before the end of the 60 day period beginning on the earlier of:

   (i) the end of the 180 day period which the Receiver has to determine whether to allow or disallow claims, or

   (ii) the date of any notice of disallowance of the claim.

CAVEAT: This outline of the claims process is provided for informational purposes only. It in no way alters or affects the controlling statutory provisions in 12 U.S.C. § 1821. Furthermore, it does *NOT* apply to any situation in which a claimant elects to pursue the expedited claims procedure in 12 U.S.C. § 1821(d)(8). PARTIES SHOULD REFER TO THE APPLICABLE STATUTORY PROVISIONS TO DETERMINE THEIR RIGHTS AND OBLIGATIONS UNDER THE CLAIMS PROCEDURE.