Serge MARQUIS, et al., Plaintiffs, Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Liquidating Agent of Hillsborough Bank & Trust Company, Defendant, Appellant.

ELTREX INTERNATIONAL CORPORATION, et al., Plaintiffs, Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Liquidating Agent of Hillsborough Bank & Trust Company, Defendant, Appellant.

Michael M. MILLS, Plaintiff, Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Nashua Trust Company, Defendant, Appellant.

James P. GOODRICH, Plaintiff, Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Dartmouth Bank, Defendant, Appellant.

Nos. 92–1113, 92–1179, 92–1216 to 92–1218.

United States Court of Appeals, First Circuit.

Heard April 9, 1992.

Decided May 15, 1992.

Order on Rehearing and Rehearing En Banc Denied June 4, 1992.

---

**15.** Of course, unsecured creditors, as well as the chapter 7 debtor, enjoy limited participatory rights short of formal intervention. First, as previously noted, the chapter 7 debtor and creditors normally are entitled to notice of any administrative proceeding conducted on the approval of a compromise or settlement. Fed. R.Bankr.P. § 9019(a), 2002(a)(3). *See also In re Baker,* 22 B.R. at 793 (creditor denied leave to intervene may file amicus brief below). Second, creditors may petition the bankruptcy court to remove the trustee "for cause." *See* Bankruptcy Code § 324, 11 U.S.C. § 324. Finally, an action may lie to surcharge a trustee's bond for failure to discharge statutory duties. *See* Bankruptcy Code § 322, 11 U.S.C. § 322; *see also In re San Juan Hotel Corp.,* 847 F.2d 931, 937 (1st Cir.1988).

**1150**

Michael H. Krimminger, Counsel, with whom Ann S. Duross, Asst. Gen. Counsel, and Richard J. Osterman, Jr., Sr. Counsel, Washington, D.C., were on brief, for appellant F.D.I.C.

Jay L. Hodes, with whom Heather M. Jeans and Bossie, Kelly & Hodes, P.A., Manchester, N.H., were on brief, for appellees Serge Marquis, et al.

Eleanor Dahar, with whom Victor W. Dahar, P.A., Manchester, N.H., was on brief, for appellees Eltrex Intern. Corp., et al.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and YOUNG,* District Judge.

SELYA, Circuit Judge.

These consolidated appeals raise an important question concerning the extent of the restrictions on the federal courts' subject matter jurisdiction imposed by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183, codified in scattered sections of 12 U.S.C. (Supp. II 1990). The Federal Deposit Insurance Corporation (FDIC) claims that FIRREA's jurisdictional bar, 12 U.S.C. § 1821(d)(13)(D), requires federal courts to dismiss virtually all civil actions pending against a failed financial institution at the time the FDIC is appointed as receiver. The court below rejected this broadcast claim. After careful consideration of the relevant portions of the Act, we hold that FIRREA does not require courts automatically to dismiss all actions instituted against a failed bank prior to the FDIC's appointment as receiver of the institution.

## I. BACKGROUND

The nature of this proceeding does not demand an exegetic discussion of particular facts.[1] It suffices to recount seven events common to the four underlying cases:

1. The plaintiff (or co-plaintiffs, in two of the cases) sued an FDIC-insured financial institution in a New Hampshire state court.

2. The pleadings stated one or more claims for money damages, chargeable against the institution's assets, arising out of some challenged banking practice.

3. The financial institution was declared insolvent while the litigation was pending.

4. The FDIC was appointed as receiver, *see* 12 U.S.C. § 1821(c)(3)(A), and thereupon removed the case to federal district court. *See* 12 U.S.C. § 1819(b)(2)(B).

5. Once removal was perfected, the FDIC sought dismissal, contending that the court lacked subject matter jurisdiction to adjudicate the creditors' claims unless and until those claims were timely filed with, and processed through, the administrative mechanism embodied in FIRREA. *See* 12 U.S.C. § 1821(d)(3)–(10).

6. The district court denied the motion for dismissal, 779 F.Supp. 6 (but, eventually, stayed proceedings to permit resort to, and operation of, FIRREA's administrative claims review process).

---

\* Of the District of Massachusetts, sitting by designation.

1. In brief, appellees Serge Marquis and Gail Marquis sued Hillsborough Bank & Trust Company for breach of contract, breach of fiduciary duty, and misrepresentation in connection with a second mortgage loan. Appellees Eltrex International Corp. and Thomas Sullivan sued Hillsborough for rescission of a $400,000 promissory note and for damages in respect thereto. Appellee Michael Mills sued Nashua Trust Company for damages stemming from breach of fiduciary duty, misrepresentation, wrongful foreclosure, .etc. Appellee James Goodrich sued Dartmouth Bank for indemnification.

7. At the FDIC's request, the district court certified its ruling regarding subject matter jurisdiction for interlocutory appeal.[2]

Because of the importance of the jurisdictional question, and its unsettled nature, we accepted appellate jurisdiction, *see* 28 U.S.C. § 1292(b) (1988), and expedited the appeals.

## II. ISSUE PRESENTED

■ In this case, our inquiry reduces to a single question: do the federal courts retain subject matter jurisdiction over actions pending against failed financial institutions once the FDIC has been appointed as receiver? We answer this query in the affirmative, noting, moreover, that our ensuing discussion applies equally to the Resolution Trust Corporation (RTC) in those instances where the RTC is appointed as the receiver of a failed financial institution in place of the FDIC, *see* 12 U.S.C. § 1441a(b)(4). Ancillary to this response, we also examine, and comment upon, the federal courts' powers to stay litigation pending completion of FIRREA's administrative claims review process (ACRP).

## III. ANALYSIS

FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses—a veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising—it is inevitable.

Our concern here is with 12 U.S.C. § 1821(d) (Supp. II 1990), reproduced in the Appendix. This section deals, generally, with the FDIC's powers and duties when acting as a receiver of a failed financial institution. In the interest of affording context, it may be noted that section 1821(d) trails directly in the wake of statutory descriptions of the FDIC's responsibilities for insuring deposits, 12 U.S.C. § 1821(a); intervening in bank liquidations, 12 U.S.C. § 1821(b); and becoming the receiver for failed depository institutions, 12 U.S.C. § 1821(c). Section 1821(d), then, is a relatively small piece of the statutory puzzle—but one which exemplifies the larger interpretive problem: section 1821(d) is comprised of nineteen separately numbered fascicles, most with myriad subparts, occupying seven pages of the United States Code. It is, in short, an avalanche of words.

### A.

■ We begin our analysis with the rudiments of the statutory scheme. We think that FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver.[3] *See Meliezer v. RTC*, 952 F.2d 879, 882 (5th Cir.1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required."); *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3d Cir.1991) (in enacting FIRREA, "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821."); *see also RTC v. Elman*, 949 F.2d 624, 627 (2d Cir.1991); *RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991) (per curiam); *Coston v.*

---

**2.** Only three of the appeals were actually certified under 28 U.S.C. § 1292(b) (1988). The remaining appeals, which together implicate a single case, are before us in a more problematic posture. Because all five appeals present the same substantive question, however, we have concluded that the difference in how they arrived on our doorstep need not be addressed.

**3.** The courts are in some disarray as to the exact source of this exhaustion requirement. *Compare, e.g., RTC v. Elman*, 949 F.2d 624, 627 (2d Cir.1991) (citing 12 U.S.C. § 1821(d)(13)(D)(i) for proposition), *with, e.g., RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991) (per curiam) (citing 12 U.S.C. § 1821(d)(3)(B)(i) for proposition). The instant appeals do not require us either to reconcile, or to choose among, these conflicting views.

*Gold Coast Graphics, Inc.*, 782 F.Supp. 1532, 1537 (S.D.Fla.1992). *But see FDIC v. Grillo*, 788 F.Supp. 641, 647 (D.N.H.1992) (holding that "utilization of the administrative adjudication procedure is not mandatory or exclusive"). Accordingly, we rule that, where a claimant has been properly notified of the appointment of a federal insurer as receiver, 12 U.S.C. § 1821(d)(3)(B)–(C), and has nonetheless failed to initiate an administrative claim within the filing period, 12 U.S.C. § 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court. *See* 12 U.S.C. § 1821(d)(5)(C)(i).

To this point, our analysis comports with the FDIC's views. But at the next crossroad, we head in different directions. The FDIC not only urges that claimants must exhaust the remedies afforded by the ACRP, but says that, while the ACRP runs its course, preexisting actions must be dismissed (even though, as a practical matter, claimants can file new lawsuits if not fully satisfied with the outcome of the administrative proceedings, *see* 12 U.S.C. § 1821(d)(6)(A)). This is the matter's crux.

### B.

■ The FDIC bases its argument on the following statutory provision:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to

any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). The jurisdictional bar of section (d)(13)(D) reaches all claims seeking payment from the assets of the affected institution; all suits seeking satisfaction from those assets; and all actions for the determination of rights vis-a-vis those assets. *See Rosa v. RTC*, 938 F.2d 383, 393 (3d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). Starting from this baseline, the FDIC asserts that, with respect to suits pending against financial institutions at the time an FDIC receivership ensues, no jurisdiction inheres until after the ACRP, described in subsections (d)(3)–(10), has run its course.[4]

Quite plainly, Congress intended the ACRP to provide a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation. *See* H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., at 418–19, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 214–15 ("The claims determination procedure ... creates a system which ... enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."). In the FDIC's view, this intent would be thwarted if pending actions were allowed to proceed in the district court in lieu of, or concurrent with, the processing of administrative claims premised on the same nucleus of operative facts.

This interpretation, however, seems inconsistent with other parts of FIRREA. The single sentence which is most difficult to harmonize with the FDIC's reading of the statute is the provision which states that, subject to the 90–day stay described elsewhere in the statute, *see* 12 U.S.C. § 1821(d)(12)(A), "the filing of a claim with the receiver shall not prejudice any right of

---

**4.** These subsections grant to the FDIC, acting in its capacity as receiver, the authority to determine claims against the failed institution. The same subsections set out basic guidelines governing the ACRP. Among the more important provisions under the FDIC's interpretation are subsections (d)(5)(A)(i) (requiring that an administrative determination be made within 180 days next following the filing of a claim), 12 U.S.C. § 1821(d)(5)(A)(i); subsection (d)(5)(A)(ii) (allowing an extension of the claims processing period upon written agreement of the claimant and the FDIC), 12 U.S.C. § 1821(d)(5)(A)(ii); and subsection (d)(6)(A) (authorizing further administrative review or de novo judicial review of disallowed claims, as the claimant prefers), 12 U.S.C. § 1821(d)(6)(A).

the claimant to continue any action which was filed before the appointment of a receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). What could be more prejudicial to a claimant's right "to continue" a pending action than the outright dismissal of the action?

The FDIC's attempted answer strikes us as lame. It argues that 12 U.S.C. § 1821(d)(5)(F)(ii) and its counterpart, 12 U.S.C. § 1821(d)(8)(E)(ii) (providing a similar disclaimer of prejudice with reference to parties proceeding under FIRREA's expedited claims procedures), do not serve to insulate pre-receivership suits from dismissal, but merely protect pre-receivership litigants from actual prejudice, such as time bars, pending completion of the ACRP. That asseveration, however, fails to explain why Congress used the verb "continue" rather than a verb such as "recommence" or "refile." Indeed, the FDIC's recension of the law simply reads the word "continue" out of the statute.

It is also difficult to imagine why Congress would have felt a need to provide for stays of pending suits, 12 U.S.C. § 1821(d)(12), if such suits were automatically to be dismissed. Once again, the FDIC has an answer—but not a good one. It contends that withdrawing cases from the courts by automatic dismissal does not make a nullity of the 90–day stay provision, since 12 U.S.C. § 1821(d)(12) applies not only to actions brought *against* insolvent financial institutions but also to actions brought *by* those institutions (and thus, the subsection serves to furnish the FDIC with an opportunity to freeze litigation for a brief period in order to familiarize itself with claims which it bears the burden of pursuing, if it so chooses). But, the stay provision applies to actions in which the institution is "a party," *id.*, not merely to actions in which the institution is "a plaintiff." And, the FDIC has pointed to nothing in FIRREA's compendious legislative history that suggests Congress was think-ing along the lines of a plaintiff/defendant dichotomy in fashioning FIRREA's stay provisions.

### C.

The sockdolager is that the jurisdictional bar upon which the FDIC relies contains a specific exemption allowing retention of cases if, and to the extent that, jurisdiction is "otherwise provided in this subsection." 12 U.S.C. § 1821(d)(13)(D). The reference to "this subsection," when read in context, is clearly a reference to section 1821(d) in its entirety.[5] *Accord Simms v. Biondo,* 785 F.Supp. 322, 325 (E.D.N.Y.1992). Section 1821(d)'s grant of jurisdiction is variously expressed. *See, e.g.,* 12 U.S.C. § 1821(d)(6)(A) (conferring district court jurisdiction to entertain suits based upon disallowed claims); 12 U.S.C. § 1821(d)(7)(A) (conferring district court jurisdiction to entertain suits based on claims which, after initial disallowance, have undergone administrative review); 12 U.S.C. § 1821(d)(8)(C) (conferring district court jurisdiction to entertain suits based on claims disallowed under the expedited claims procedure). In addition to these express grants of jurisdiction over disallowed claims, however, section 1821(d) also implies the existence of jurisdiction in other circumstances. *See, e.g.,* 12 U.S.C. § 1821(d)(13)(B) (a provision that vests the FDIC, *qua* receiver, with "all the rights and remedies available" to the failed institution to pursue appealable judgments, and thus allows for continued appellate jurisdiction). In much the same manner, we think that subsections (d)(5)(F)(ii), (d)(8)(E)(ii), and (d)(12) coalesce to show Congress' discernible intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver.

■ Subsection (d)(5)(F)(ii) is part of the rubric that establishes the ACRP.[6] It states that, "[s]ubject to paragraph (12),

---

5. We reject the contrary conclusion reached in *New Maine Nat'l Bank v. Reef,* 765 F.Supp. 763 (D.Me.1991). The *New Maine* court incorrectly read the "otherwise provided in this subsection" language as referring only to § 1821(d)(13)(D), rather than to all of § 1821(d). *Id.* at 765.

6. 12 U.S.C. § 1821(d)(8)(E)(ii), which is part of the rubric that establishes the expedited claims procedure, is worded identically to 12 U.S.C. § (d)(5)(F)(ii) and, thus, bolsters the view that we take of FIRREA jurisdiction.

the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). The provision to which this subsection refers is entitled "Suspension of Legal Actions." It provides in relevant part:

> After the appointment of a ... receiver for an insured depository institution, the ... receiver may request a stay for a period not to exceed—
>
> .    .    .    .    .
>
> (ii) 90 days ... in any judicial action or proceeding to which such institution is or becomes a party.

12 U.S.C. § 1821(d)(12)(A). The next subparagraph commands courts to grant all such stays, when and if requested. 12 U.S.C. § 1821(d)(12)(B). We read these sections, in combination, as constructing a scheme under which courts will retain jurisdiction over pending lawsuits—suspending, rather than dismissing, the suits—subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims.

In our opinion, reading FIRREA in this fashion is as faithful as possible to the statute's text, harmonizes its various provisions, and is consistent with the policies which Congress sought to advance. Faced with a national banking crisis, Congress wanted to facilitate takeovers of insolvent financial institutions and smooth the modalities by which rehabilitation might be accomplished. To this end, FIRREA was designed to create an efficient administrative protocol for processing claims against failed banks. This objective would be disserved by forcing the courts to dismiss all pending litigation, only to have the cases refiled when and if administrative settlement proved impracticable. It is difficult to conceive of anything less efficient than dismissing a suit that has been, say, two years in process, only to have an identical suit started afresh some six months later. By staying all proceedings in a pending action until the administrative claims process has run its course, efficacy will be promoted. At that point, suits based upon resolved claims can be dismissed outright, whereas suits based upon claims still unresolved can simply be resumed, thereby dispelling the need to retrace steps already completed.

By the same token, other policies which Congress obviously sought to advance in enacting FIRREA—fairness to claimants, minimization of expense, and thoughtful husbanding of scarce judicial resources—are also furthered by reading the statute as we do. Claimants will be spared the unnecessary costs of refiling cases and bringing them up to speed. Courts will similarly be spared the trouble of starting from ground zero in each and every case in which an administrative settlement does not materialize.

In short, four powerful indicators of FIRREA's meaning—the structure of the Act, its language, the underlying legislative intent, and common sense—unanimously counsel in favor of a construction of FIRREA that permits federal courts to retain subject matter jurisdiction in circumstances where a bank's failure (and the FDIC's appointment as receiver) postdates the institution of a suit against the bank.

### D.

■ We were informed, at oral argument, that in one of these cases the district court entered a supplemental stay extending the original stay from 90 days to 180 days to allow for completion of the ACRP. This raises the related question of whether the 90–day stay described in 12 U.S.C. § 1821(d)(12) limits the duration of stays that may be granted when FIRREA intercepts a pre-receivership suit. We do not believe that any such limitation exists.

It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention. See Landis v. North Amer. Co., 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); In re Ramu Corp., 903 F.2d 312, 318 (5th Cir.1990); Harmon Kardon, Inc. v. Ashley

*Hi–Fi,* 602 F.2d 21, 23 (1st Cir.1979); *see also HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 915–16 (1st Cir.1988) (discussing federal courts' "inherent power to provide themselves with appropriate instruments required for the performance of their duties") (quoting *Ex Parte Peterson,* 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920)). Of course, stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced. *See, e.g., Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R.,* 818 F.2d 1034, 1039 (1st Cir.1987); *Providence Journal Co. v. FBI,* 595 F.2d 889, 890 (1st Cir.1979); *Chang v. Univ. of R.I.,* 107 F.R.D. 343, 344 (D.R.I.1985).

■ In our judgment, FIRREA cannot be read to foreclose district courts from granting stays above and beyond the 90–day automatic stay described in section 1821(d)(12). Moreover, given Congress' insistence that virtually all claims against failed financial institutions should be subjected to administrative scrutiny once the FDIC steps in as a receiver, we see no reason why, in the vast majority of leftover pre-receivership cases, district judges would not, upon request of a party, hold pending litigation in abeyance until the administrative review process has run its course, or 180 days has passed, whichever first occurs.[7] *See Simms,* 785 F.Supp. at 325 (staying pending action as suggested herein); *Coston,* 782 F.Supp. at 1533, 1536 (Congress intended that pending actions be stayed until the ACRP was completed); *In re FDIC,* 762 F.Supp. 1002, 1004–05 (D.Mass.1991) (although FIRREA does not explicitly provide for a stay greater than 90 days, a stay for the duration of the claims processing period is necessarily implied); *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 737 F.Supp. 18, 20 (D.N.J.1990) (Congress intended 180 day stay); *see also Bank of New England v. Callahan,* 758 F.Supp. 61, 64 (D.N.H.1991) (staying action for duration of claims processing period); *cf. Fillinger v. Cleveland Soc'y for the Blind,* 587 F.2d 336, 338 (6th Cir.1978) (staying suit to permit exhaustion of administrative and arbitral remedies under newly enacted statute).

## IV. CONCLUSION

We need go no further. We hold that FIRREA did not strip the federal courts of subject matter jurisdiction over civil actions pending against a failed financial institution at the time the FDIC takes over as the institution's receiver. The court may, however, in its discretion—and ordinarily should—stay proceedings for more than the 90 days specified in 12 U.S.C. § 1812(d)(12) so as to permit exhaustion of the mandatory administrative claims review process.[8] Hence, we affirm the district court's refusal to dismiss the underlying actions for want of subject matter jurisdiction and remand the cases to the court below for further proceedings not inconsistent herewith. Costs shall be taxed in appellees' favor.

*So Ordered.*

### APPENDIX
**12 U.S.C. § 1821(d) (Supp. II 1990)**

**(d) Powers and duties of Corporation as conservator or receiver**

**(1) Rulemaking authority of Corporation**

The Corporation may prescribe such regulations as the Corporation determines to be appropriate regarding the conduct of conservatorships or receiverships.

---

7. In the event that the claimant and the receiver agree to extend the claims processing period, *see* 12 U.S.C. § 1821(d)(5)(A)(ii), we envision that the court could extend the stay to correspond with the elongated period.

8. We note that, by explicitly providing for a 90–day stay in judicial proceedings when the claims process will, in all likelihood, require more time to run its course, Congress has left the courts without clear direction regarding the issuance of longer stays. In the interest of statutory housekeeping, Congress may wish to revisit FIRREA and cure this apparent lapse.

### (2) General powers

#### (A) Successor to institution

The Corporation shall, as conservator or receiver, and by operation of law, succeed to—

(i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

#### (B) Operate the institution

The Corporation may, as conservator or receiver—

(i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(ii) collect all obligations and money due the institution;

(iii) perform all functions of the institution in the name of the institution which is consistent with the appointment as conservator or receiver; and

(iv) preserve and conserve the assets and property of such institution.

#### (C) Functions of institution's officers, directors, and shareholders

The Corporation may, by regulation or order, provide for the exercise of any function by any member or stockholder, director, or officer of any insured depository institution for which the Corporation has been appointed conservator or receiver.

#### (D) Powers as conservator

The Corporation may, as conservator, take such action as may be—

(i) necessary to put the insured depository institution in a sound and solvent condition; and

(ii) appropriate to carry on the business of the institution and preserve and conserve the assets and property of the institution.

#### (E) Additional powers as receiver

The Corporation may, as receiver, place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality.

#### (F) Organization of new institutions

The Corporation may, as receiver—

(i) with respect to savings associations and by application to the Director of the Office of Thrift Supervision, organize a new Federal savings association to take over such assets or such liabilities as the Corporation may determine to be appropriate; and

(ii) with respect to any insured bank, organize a new national bank under subsection (m) of this section or a bridge bank under subsection (n) of this section.

#### (G) Merger; transfer of assets and liabilities

##### (i) In general

The Corporation may, as conservator or receiver—

(I) merge the insured depository institution with another insured depository institution; or

(II) subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer.

##### (ii) Approval by appropriate Federal banking agency

No transfer described in clause (i)(II) may be made to another depository institution (other than a new bank or a bridge bank established pursuant to subsection (m) or (n) of this section) without the approval of the appropriate Federal banking agency for such institution.

#### (H) Payment of valid obligations

The Corporation, as conservator or receiver, shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter.

#### (I) Subpoena authority

##### (i) In general

The Corporation may, as conservator, receiver, or exclusive manager and for purposes of carrying out any power, authority, or duty with respect to an insured depository institution (including determining any claim against the institution and determining and realizing upon any asset of any person in the course of

collecting money due the institution), exercise any power established under section 1818(n) of this title, and the provisions of such section shall apply with respect to the exercise of any such power under this subparagraph in the same manner as such provisions apply under such section.

**(ii) Authority of Board of Directors**

A subpoena or subpoena duces tecum may be issued under clause (i) only by, or with the written approval of, the Board of Directors or their designees (or, in the case of a subpoena or subpoena duces tecum issued by the Resolution Trust Corporation under this subparagraph and section 1441a(b)(4) [3] of this title, only by, or with the written approval of, the Board of Directors of such Corporation or their designees).

**(iii) Rule of construction**

This subsection shall not be construed as limiting any rights that the Corporation, in any capacity, might otherwise have under section 1820(c) of this title.

**(J) Incidental powers**

The Corporation may, as conservator of receiver—

(i) exercise all powers and authorities specifically granted to conservators or receivers, respectively, under this chapter and such incidental powers as shall be necessary to carry out such powers; and

(ii) take any action authorized by this chapter,

which the Corporation determines is in the best interests of the depository institution, its depositors, or the Corporation.

**(3) Authority of receiver to determine claims**

**(A) In general**

The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph (4)(A).

**(B) Notice requirements**

The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—

(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

**(C) Mailing required**

The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

**(4) Rulemaking authority relating to determination of claims**

The Corporation may prescribe regulations regarding the allowance or disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination.

**(5) Procedures for determination of claims**

**(A) Determination period**

**(i) In general**

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

**(ii) Extension of time**

The period described in clause (i) may be extended by a written agreement between the claimant and the Corporation.

**(iii) Mailing of notice sufficient**

The requirements of clause (i) shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the

[3] See References in Text note below.

last address of the claimant which appears—

    (I) on the depository institution's books;

    (II) in the claim filed by the claimant; or

    (III) in documents submitted in proof of the claim.

**(iv) Contents of notice of disallowance**

If any claim filed under clause (i) is disallowed, the notice to the claimant shall contain—

    (I) a statement of each reason for the disallowance; and

    (II) the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim.

**(B) Allowance of proven claims**

The receiver shall allow any claim received on or before the date specified in the notice published under paragraph (3)(B)(i) by the receiver from any claimant which is proved to the satisfaction of the receiver.

**(C) Disallowance of claims filed after end of filing period**

**(i) In general**

Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

**(ii) Certain exceptions**

Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—

    (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and

    (II) such claim is filed in time to permit payment of such claim.

**(D) Authority to disallow claims**

The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver.

**(E) No judicial review of determination pursuant to subparagraph (D)**

No court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim.

**(F) Legal effect of filing**

**(i) Statute of limitation tolled**

For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action.

**(ii) No prejudice to other actions**

Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

**(6) Provision for agency review or judicial determination of claims**

**(A) In general**

Before the end of the 60–day period beginning on the earlier of—

    (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

    (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

**(B) Statute of limitations**

If any claimant fails to—

    (i) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or

    (ii) file suit on such claim (or continue an action commenced before the appointment of the receiver),

before the end of the 60–day period described in subparagraph (A), the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disal-

lowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

**(7) Review of claims**

**(A) Administrative hearing**

If any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the Corporation agrees to such request, the Corporation shall consider the claim after opportunity for a hearing on the record. The final determination of the Corporation with respect to such claim shall be subject to judicial review under chapter 7 of title 5.

**(B) Other review procedures**

**(i) In general**

The Corporation shall also establish such alternative dispute resolution processes as may be appropriate for the resolution of claims filed under paragraph (5)(A)(i).

**(ii) Criteria**

In establishing alternative dispute resolution processes, the Corporation shall strive for procedures which are expeditious, fair, independent, and low cost.

**(iii) Voluntary binding or nonbinding procedures**

The Corporation may establish both binding and nonbinding processes, which may be conducted by any government or private party, but all parties, including the claimant and the Corporation, must agree to the use of the process in a particular case.

**(iv) Consideration of incentives**

The Corporation shall seek to develop incentives for claimants to participate in the alternative dispute resolution process.

**(8) Expedited determination of claims**

**(A) Establishment required**

The Corporation shall establish a procedure for expedited relief outside of the routine claims process established under paragraph (5) for claimants who—

(i) allege the existence of legally valid and enforceable or perfected security interests in assets of any depository institution for which the Corporation has been appointed receiver; and

(ii) allege that irreparable injury will occur if the routine claims procedure is followed.

**(B) Determination period**

Before the end of the 90–day period beginning on the date any claim is filed in accordance with the procedures established pursuant to subparagraph (A), the Corporation shall—

(i) determine—

(I) whether to allow or disallow such claim; or

(II) whether such claim should be determined pursuant to the procedures established pursuant to paragraph (5); and

(ii) notify the claimant of the determination, and if the claim is disallowed, a statement of each reason for the disallowance and the procedure for obtaining agency review or judicial determination.

**(C) Period for filing or renewing suit**

Any claimant who files a request for expedited relief shall be permitted to file a suit, or to continue a suit filed before the appointment of the receiver, seeking a determination of the claimant's rights with respect to such security interest after the earlier of—

(i) the end of the 90–day period beginning on the date of the filing of a request for expedited relief; or

(ii) the date the Corporation denies the claim.

**(D) Statute of limitations**

If an action described in subparagraph (C) is not filed, or the motion to renew a previously filed suit is not made, before the end of the 30–day period beginning on the date on which such action or motion may be filed in accordance with subparagraph (B), the claim shall be deemed to be disallowed as of the end of such period (other than any portion of such claim which was allowed by the receiver), such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

**(E) Legal effect of filing**

**(i) Statute of limitation tolled**

For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action.

**(ii) No prejudice to other actions**

Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

**(9) Agreement as basis of claim**

**(A) Requirements**

Except as provided in subparagraph (B), any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation.

**(B) Exception to contemporaneous execution requirement**

Notwithstanding section 1823(e)(2) of this title, any agreement relating to an extension of credit between a Federal home loan bank or Federal Reserve bank and any insured depository institution which was executed before the extension of credit by such bank to such institution shall be treated as having been executed contemporaneously with such extension of credit for purposes of subparagraph (A).

**(10) Payment of claims**

**(A) In general**

The receiver may, in the receiver's discretion and to the extent funds are available, pay creditor claims which are allowed by the receiver, approved by the Corporation pursuant to a final determination pursuant to paragraph (7) or (8), or determined by the final judgment of any court of competent jurisdiction in such manner and amounts as are authorized under this chapter.

**(B) Payment of dividends on claims**

The receiver may, in the receiver's sole discretion, pay dividends on proved claims at any time, and no liability shall attach to the Corporation (in such Corporation's corporate capacity or as receiver), by reason of any such payment, for failure to pay dividends to a claimant whose claim is not proved at the time of any such payment.

**(11) Distribution of assets**

**(A) Subrogated claims; claims of uninsured depositors and other creditors**

The receiver shall—

(i) retain for the account of the Corporation such portion of the amounts realized from any liquidation as the Corporation may be entitled to receive in connection with the subrogation of the claims of depositors; and

(ii) pay to depositors and other creditors the net amounts available for distribution to them.

**(B) Distribution to shareholders of amounts remaining after payment of all other claims and expenses**

In any case in which funds remain after all depositors, creditors, other claimants, and administrative expenses are paid, the receiver shall distribute such funds to the depository institution's shareholders or members together with the accounting report required under paragraph (14)(C).

**(12) Suspension of legal actions**

**(A) In general**

After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed—

(i) 45 days, in the case of any conservator; and

(ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party.

**(B) Grant of stay by all courts required**

Upon receipt of a request by any conservator or receiver pursuant to subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties.

**(13) Additional rights and duties**

**(A) Prior final adjudication**

The Corporation shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Corporation as conservator or receiver.

**(B) Rights and remedies of conservator or receiver**

In the event of any appealable judgment, the Corporation as conservator or receiver shall—

(i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver) and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights; and

(ii) not be required to post any bond in order to pursue such remedies.

**(C) No attachment or execution**

No attachment or execution may issue by any court upon assets in the possession of the receiver.

**(D) Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

**(14) Statute of limitations for actions brought by conservator or receiver**

**(A) In general**

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

**(B) Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

**(15) Accounting and recordkeeping requirements**

**(A) In general**

The Corporation as conservator or receiver shall, consistent with the accounting and reporting practices and procedures established by the Corporation, maintain a full accounting of each conservatorship and receivership or other disposition of institutions in default.

**(B) Annual accounting or report**

With respect to each conservatorship or receivership to which the Corporation was appointed, the Corporation shall make an annual accounting or report, as appropriate, available to the Secretary of the Treasury, the Comptroller General of the United States, and the authority which appointed the Corporation as conservator or receiver.

**(C) Availability of reports**

Any report prepared pursuant to subparagraph (B) shall be made available by the Corporation upon request to any shareholder of the depository institution for which the Corporation was appointed conservator or receiver or any other member of the public.

**(D) Recordkeeping requirement**

After the end of the 6–year period beginning on the date the Corporation is appointed as receiver of an insured depository institution, the Corporation may destroy any records of such institution which the Corporation, in the Corporation's discretion, determines to be unnecessary unless directed not to do so by a court of competent jurisdiction or governmental agency, or prohibited by law.

**(16) Contracts with State housing finance authorities**

**(A) In general**

The Corporation may enter into contracts with any State housing finance authority for the sale of mortgage-related assets (as such terms are defined in section 1441a–1 of this title) of any depository institution in default (including assets and liabilities associated with any trust business), such contracts to be effective in accordance with their terms without any further

approval, assignment, or consent with respect thereto.

**(B) Factors to consider**

In evaluating the disposition of mortgage related assets to any State housing finance authority the Corporation shall consider—

(i) the State housing finance authority's ability to acquire and service current, delinquent, and defaulted mortgage related assets;

(ii) the State housing finance authority's ability to further national housing policies;

(iii) the State housing finance authority's sensitivity to the impact of the sale of mortgage related assets upon the State and local communities;

(iv) the costs to the Federal Government associated with alternative ownership or dispositions of the mortgage related assets;

(v) the minimization of future guaranties which may be required of the Federal Government;

(vi) the maximization of mortgage related asset values; and

(vii) the utilization of institutions currently established in mortgage related asset market activities.

**(17) Fraudulent transfers**

**(A) In general**

The Corporation, as conservator or receiver for any insured depository institution, and any conservator appointed by the Comptroller of the Currency or the Director of the Office of Thrift Supervision may avoid a transfer of any interest of an institution–affiliated party, or any person who the Corporation or conservator determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the Corporation or conservator was appointed conservator or receiver if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency.

**(B) Right of recovery**

To the extent a transfer is avoided under subparagraph (A), the Corporation or any conservator described in such subparagraph may recover, for the benefit of the insured depository institution, the property transferred, or, if a court so orders, the value of such property (at the time of such transfer) from—

(i) the initial transferee of such transfer or the institution-affiliated party or person for whose benefit such transfer was made; or

(ii) any immediate or mediate transferee of any such initial transferee.

**(C) Rights of transferee or obligee**

The Corporation or any conservator described in subparagraph (A) may not recover under subparagraph (B) from—

(i) any transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith; or

(ii) any immediate or mediate good faith transferee of such transferee.

**(D) Rights under this paragraph**

The rights under this paragraph of the Corporation and any conservator described in subparagraph (A) shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under title 11.

**(18) Attachment of assets and other injunctive relief**

Subject to paragraph (19), any court of competent jurisdiction may, at the request of—

(A) the Corporation (in the Corporation's capacity as conservator or receiver for any insured depository institution or in the Corporation's corporate capacity with respect to any asset acquired or liability assumed by the Corporation under this section or section 1822 or 1823 of this title); or

(B) any conservator appointed by the Comptroller of the Currency or the Director of the Office of Thrift Supervision,

issue an order in accordance with Rule 65 of the Federal Rules of Civil Procedure, including an order placing the assets of any person designated by the Corporation or such conservator under the control of the court and appointing a trustee to hold such assets.

**(19) Standards**

**(A) Showing**

Rule 65 of the Federal Rules of Civil Procedure shall apply with respect to any proceeding under paragraph (18) without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

**(B) State proceeding**

If, in the case of any proceeding in a State court, the court determines that rules of civil procedure available under the laws of such State provide substantially similar protections to such party's right to due process as Rule 65 (as modified with respect to such proceeding by subparagraph (A)), the relief sought by the Corporation or a conservator pursuant to paragraph (18) may be requested under the laws of such State.

**(e) Provisions relating to contracts entered into before appointment of conservator or receiver**

**(1) Authority to repudiate contracts**

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

**(2) Timing of repudiation**

The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) of this section shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

**(3) Claims for damages for repudiation**

**(A) In general**

Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

(i) limited to actual direct compensatory damages; and

(ii) determined as of—

(I) the date of the appointment of the conservator or receiver; or

(II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

**(B) No liability for other damages**

For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—

(i) punitive or exemplary damages;

(ii) damages for lost profits or opportunity; or

(iii) damages for pain and suffering.

**(C) Measure of damages for repudiation of financial contracts**

In the case of any qualified financial contract or agreement to which paragraph (8) applies, compensatory damages shall be—

(i) deemed to include normal and reasonable costs of cover or other reasonable measures of damages utilized in the industries for such contract and agreement claims; and

(ii) paid in accordance with this subsection and subsection (k) of this section except as otherwise specifically provided in this section.

**(4) Leases under which the institution is the lessee**

**(A) In general**

If the conservator or receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.

ORDER OF THE COURT

June 4, 1992.

The petition for rehearing en banc filed by the Federal Deposit Insurance Corporation is, under this court's internal operating procedures, considered both by the panel and by the full court. Panel rehearing is hereby denied for the following reason.

The FDIC's argument to the effect that 12 U.S.C. § 1821(d)(6)(A) requires a stay of pre-receivership litigation until the statutory claims review process is completed has

no bearing on these appeals (as here, the district court granted, rather than denied, a supplemental stay). The instant petition, therefore, amounts to no more than a request for an advisory opinion—a request that we decline to honor. We take no view of whether, in an appropriate case, section 1821(d)(6)(A) may require a supplemental stay pending completion of the administrative claims review process.